UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**FRED YOUNG and JEFF FIRMAN,**

**Plaintiffs,**

**v.** **Case No. 8:22-cv-2894-MSS-CPT**

**PANERA, LLC,**

**Defendant.**
_______________________________________/

# ORDER

**THIS CAUSE** comes before the Court for consideration of Defendant Panera, LLC's Renewed Motion for Judgment as a Matter of Law, Alternative Motion for New Trial or Motion for Remittitur, (Dkt. 143), and Plaintiffs' response in opposition. (Dkt. 149) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **DENIES** Defendant's Motion.

## I. BACKGROUND

On November 21, 2022, Fred Young and Jeff Firman ("Plaintiffs") initiated this action against Panera, LLC ("Defendant" or "Panera") in the Circuit Court for the Twelfth Judicial Circuit in and for Sarasota County, Florida. (Dkt. 1-1) On December 21, 2022, Panera removed the case to this Court. (Dkt. 1) Plaintiffs sought damages for injuries sustained in an automobile collision that occurred on October 3, 2019, when a vehicle driven by Panera's former employee rear-ended a vehicle driven by

Plaintiff Young and in which Plaintiff Firman was a passenger. (Dkt. 45) In the operative complaint, Plaintiffs alleged claims of negligence against Panera on a theory of *respondeat superior*. (Id.)

From August 12 to August 22, 2024, the Court held a seven-day trial on Plaintiffs' claims against Panera. (Dkts. 113, 115, 116, 117, 120, 123, 128) At the close of Plaintiffs' evidence, Panera moved for judgment as a matter of law on four issues. (Dkt. 120; Trial Tr. Day 5 at 257–58) As to both Plaintiffs' claims, Defendant argued no reasonable jury could conclude that the motor vehicle accident caused Plaintiffs' injuries based on the evidence introduced at trial. (Trial Tr. Day 5 at 258:9-15) Defendant also argued the evidence was insufficient for a reasonable jury to find that Plaintiffs' medical expenses were reasonable and necessary. (Id.) Defendant argued it was entitled to judgment as a matter of law on the issue of whether Plaintiff Firman's injuries were permanent. (Id.) Finally, Defendant argued Plaintiffs produced insufficient evidence for a reasonable jury to determine Firman's future medical expenses. (Id.) The Court denied Panera's motion. (Id. at 308–09; Trial Tr. Day 6 at 114–15; 287–89)

On August 22, 2024, the jury returned its verdict in Plaintiffs' favor. (Dkts. 128, 130, 131) Specifically, the jury found Panera was negligent, that Panera's negligence was the legal cause of damage to Plaintiffs, that no negligence on the part of Plaintiff Young was a legal cause of damage to either Plaintiff, and that both Plaintiffs sustained a permanent injury. (Dkts. 130, 131) The jury awarded Plaintiff Young $2,780,665.34 in damages, which consisted of past and future medical expenses of $757,165.34 and

past and future non-economic damages of $2,023,500.00. (Dkt. 130) The jury awarded Plaintiff Firman $525,806.24 in damages, which consisted of past and future medical expenses of $121,146.24 and past and future non-economic damages of $404,660.00. (Dkt. 131) The Court reduced the final judgment to account for insurance and medical payments paid to Plaintiffs by State Farm Insurance Company. (Dkt. 137) The amended final judgment reflects an award of $2,765,665.34 to Plaintiff Young and an award of $515,806.24 to Plaintiff Firman. (Dkt. 138)

Panera filed its Renewed Motion for Judgment as a Matter of Law on September 27, 2024. (Dkt. 143) In the Renewed Motion, Panera argues Plaintiffs did not present competent, substantial evidence of the reasonableness of their past medical expenses. (Id. at 3) Thus, Panera contends that, under Rule 50 of the Federal Rules of Civil Procedure, it is entitled to judgment as a matter of law that Plaintiffs failed to establish their medical bills were reasonable. (Id. at 4) Panera requests the Court amend the Amended Final Judgment to reduce Plaintiff Young's award by $624,165.34 and Plaintiff Firman's award by $64,646.24. Additionally, Panera requests a new trial and gives three reasons for the request. First, Panera believes the Court erred in excluding the testimony of Panera's medical billing expert, Keyona White. (Id. at 5) Second, Panera believes it was denied a fair trial when the Court admitted Plaintiffs' medical bills as evidence of past medical expenses. (Id. at 20) Third, Panera argues it was denied a fair trial because Plaintiffs' counsel made improper arguments during his rebuttal closing argument. (Id. at 21–23) Finally, Panera's motion contains a request for remittitur. (Id. at 23–25)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 50(a)(1) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). In considering a motion for judgment as a matter of law, all reasonable inferences must be drawn in favor of the nonmoving party. Gowski v. Peake, 682 F.3d 1299, 1310–11 (11th Cir. 2012). The Court is not permitted to substitute its own judgment about "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts," as those are the functions of the jury. Id. (quoting Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 150 (2000)). Therefore, "judgment as a matter of law is appropriate only if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241, 1246 (11th Cir. 2001). "If there is substantial conflict in the evidence, such that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied." Christopher v. Florida, 449 F.3d 1360, 1364 (11th Cir. 2006) (internal citations and quotation marks omitted).

Rule 50(b) provides, "No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). "For a court to be obligated to consider a post-trial motion for judgment as a matter of law, the moving party must have made a motion for such a judgment under Rule 50(a) at the close of all the evidence." Aerospace Marketing, Inc. v. Ballistic Recovery Systems, Inc., No. 04-CV-242, 2005 WL 2290252, at *1 (M.D. Fla. Sept. 19, 2005) (citing Blasland, Bouck & Lee, Inc. v. City of North Miami, 283 F.3d 1286, 1300 (11th Cir. 2002)). Additionally, "[b]ecause the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion." Connelly v. Metro. Atlanta Rapid Transit Auth., 764 F.3d 1358, 1363–64 (11th Cir. 2014). "The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the presubmission motion under 50(a)." McGinnis v. Am. Home Mortg. Servicing, Inc., 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007)) (punctuation omitted).

Pursuant to Rule 59(a), a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Recognized grounds for a new trial include: the verdict was against the clear weight of the evidence, the damages were excessive, there were substantial errors in admission or rejection of evidence or instructions to the jury, or

the trial was otherwise not fair to the moving party." See Cornish ex rel. St. Paul Fire & Marine Ins. Co. v. Renaissance Hotel Operating Co., No. 06-CV-1722, 2008 WL 1743861, at *1 (M.D. Fla. 2008) (citing Steger v. Gen. Elec. Co., 318 F.3d 1066, 1081 (11th Cir. 2003)). "Because it is critical that a judge does not merely substitute his [or her] judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotation omitted).

## III. DISCUSSION

Panera requests a judgment as a matter of law that Plaintiffs failed to establish their medical expenses were reasonable. Additionally, Panera requests a new trial because Panera contends the Court erred in excluding the testimony of Panera's medical billing expert. Panera also argues a new trial should be granted because the Court should not have admitted Plaintiffs' medical bills as evidence of past medical expenses. Furthermore, Panera argues it was denied a fair trial due to Plaintiffs' counsel's alleged improper arguments during his rebuttal closing argument. Finally, Panera requests remittitur.

Relevant to several of Plaintiffs' arguments is what Florida law requires a personal injury plaintiff to prove to establish the reasonableness of his or her medical expenses. In Florida, "a plaintiff may recover the 'reasonable value' of his medical expenses resulting from a defendant's negligence." Cooperative Leasing, Inc. v. Johnson, 872 So. 2d 956, 958 (Fla. 2d DCA 2004). Thus, in a personal injury lawsuit,

the plaintiff "has the burden to prove the reasonableness and necessity of medical expenses." Albertson's, Inc. v. Brady, 475 So. 2d 986, 988 (Fla. 2d DCA 1985). "The plaintiff may achieve this through expert witness testimony, his or her own lay testimony, or a combination of both." Roman v. Sos, 393 So. 3d 1263, 1267 (Fla. 2d DCA 2024) (citing Walerowicz v. Armand-Hosang, 248 So. 3d 140, 145 (Fla. 4th DCA 2018)). To establish a *prima facie* claim for the recovery of past medical expenses, a plaintiff "must establish that he incurred medical expenses, that the incurrence of these medical expenses was necessary, and that the particular medical expenses claimed were reasonably related to injuries related to the subject accident." Id.

Although Florida requires "something more" than evidence of the amount of a medical bill to prove reasonableness, Albertson's, 275 So. 2d at 988, the "something more" is "not evidence that justifie[s] the amount expended but rather evidence that tie[s] the incurrence of the expense to the subject accident." Roman, 393 So. 3d at 1268. In Roman, the defendant argued that the plaintiff "did not fully establish the reasonableness of the medical expenses because he failed to provide specific evidence of the reasonableness of the dollar amounts charged by the various medical providers." Id. at 1267. The Florida Second District Court of Appeal rejected this argument. Id. at 1270. Testimony from the plaintiff and his treating physicians "along with [a] medical bill summary established that [the plaintiff] incurred damages he was responsible to repay and that the expenses were for necessary treatment for injuries reasonably related to the instant accident." Id. Accordingly, the district court concluded the plaintiff presented *prima facie* evidence of the damages element of his negligence claim.

Id.

Likewise, in Walerowicz, the Florida Fourth District Court of Appeal concluded that the plaintiff's testimony, the testimony of one of her treating doctors, and the introduction of her medical bills linked the medical treatments she received to the injury resulting from the defendant's negligence. 248 So. 3d at 144–45. This evidence was sufficient to establish the reasonableness and necessity of the medical expenses. Id. at 145. Thus, the evidence was sufficient for the plaintiff to survive the defendant's motion for a directed verdict and post-trial motions for a new trial and for judgment as a matter of law. Id.

Panera contends that Plaintiffs may only recover damages for past medical expenses if those expenses are reasonable in amount. However, the Plaintiffs' burden to prove "'the reasonableness and necessity of the medical bills'" does not require "proof of the reasonableness of the *dollar amount charged*." Roman, 393 So. 3d at 1267 (quoting Albertson's, 475 So. 2d at 988) (emphasis in original).

In its opinion, the Walerowicz court quoted the following from a decision in a criminal case: "The patient's obligation is not to pay whatever the provider demands, but only a reasonable amount." A.J. v. State, 677 So. 2d 935, 937 (Fla. 4th DCA 1996). Panera quotes this *dictum* in support of its position, and when quoted in the context of a personal injury lawsuit, the statement seems to require a plaintiff to justify the amounts of his medical bills. In A.J. v. State, a criminal case, the appellant-defendant pled guilty to aggravated battery. Id. at 936. The battery caused the victim to seek medical treatment at a hospital, the cost of which determined the amount of restitution

the court would require the appellant to pay. Id. At the restitution hearing, the appellant disputed the admissibility of the victim's hospital bills. Id. On appeal, the district court explained, "[I]n this case the medical bills were non hearsay because they constituted part of a contract that created a debt for a specific amount." Id. at 937. The district court continued:

> Liability for a medical expense usually arises because of a contract implied in fact—services are rendered with the expectation that the patient will pay a reasonable amount in return. Nursing Care Services, Inc. v. Dobos, 380 So.2d 516, 518 (Fla. 4th DCA 1980); Symon v. J. Rolfe Davis, Inc., 245 So.2d 278 (Fla. 4th DCA), cert. denied, 249 So.2d 36 (Fla.1971); 3 Corbin on Contracts §§ 562, 567 (1960). Fees are not typically discussed at the time of treatment. *The patient's obligation is not to pay whatever the provider demands, but only a reasonable amount.* A medical bill constitutes the provider's opinion of a reasonable charge for the services and an offer to settle for that amount. The patient is not legally bound by the provider's estimate; the patient may contest reasonableness by counter-offering to pay a lower amount. The patient's express or implied acceptance of the provider's estimate gives rise to an enforceable contract to pay the amount of the bill.

Id. (emphasis added). This analysis assisted the Fourth District Court of Appeal in determining whether the trial court properly admitted certain evidence in the restitution hearing. The context indicates that the court did not intend to create a rule for personal injury plaintiffs seeking to recover damages in the amount of past medical expenses. Moreover, when read in the context of the court's analysis, the statement does not support the proposition for which Panera cites it—that as a matter of law, a plaintiff cannot recover the amount of a medical bill unless the amount is reasonable. Instead, the A.J. v. State court merely noted that the amounts of medical bills are

commonly subject to negotiation and that the "patient's express or implied acceptance of the provider's estimate gives rise to an enforceable contract to pay the amount of the bill." Id.

This statement from A.J. v. State was also quoted by the Fourth District Court of Appeal in Columbia Hospital (Palm Beaches) Ltd. Partnerhsip v. Hasson, 33 So. 3d 148, 150 (Fla. 4th DCA 2010). Likewise, this case does not discuss a personal injury plaintiff's burden to prove that his or her medical expenses were reasonable. Instead, the court in Columbia Hospital affirmed the trial court's denial of a non-party hospital's request for a protective order in a motor vehicle negligence case. Id. at 149. The defendants in the case "sought discovery from the hospital concerning [the] particular procedure [performed on the plaintiff], including the amount the hospital has charged patients with and without insurance, those with letters of protection, and differences in billing for litigation patients versus non-litigation patients." Id. The district court found that the trial court properly denied the hospital's request for a protective order because the defendants showed they needed the subpoenaed information "to dispute, as unreasonable, the amount of medical expenses that the plaintiff will seek to recover from them, if the hospital charges non-litigation patients a lower fee for the same medical services." Id. at 150 (citing A.J., 677 So. 2d at 937 ("The patient's obligation is not to pay whatever the provider demands, but only a reasonable amount.")). Courts have cited this discussion in Columbia Hospital to support decisions to permit discovery of a medical provider's billing practices. See, e.g., Gray v. USAA Cas. Ins. Co., No. 21-cv-728, 2023 WL 3043642, at *2 (M.D. Fla.

Apr. 21, 2023); Aglogalou v. Dawson, No. 20-cv-2024, 2022 WL 1913299, at *3 (M.D. Fla. Apr. 15, 2022); Gulfcoast Surgery Ctr., Inc. v. Fisher, 107 So. 3d 493, 496 (Fla. 2d DCA 2013).

The foregoing case law does not require a plaintiff in a personal injury lawsuit to prove that the amount his provider charged him for medical treatment was reasonable according to an ostensibly objective standard, such as average Medicare rates. Here, Plaintiffs could satisfy their burden to show that their medical expenses were reasonable and necessary if the evidence established that they "incurred medical expenses, that the incurrence of these medical expenses was necessary, and that the particular medical expenses claimed were reasonably related to injuries related to the subject accident." Roman, 393 So. 3d at 1267. Florida law did not require Plaintiffs to prove that the amounts of their medical bills were reasonable as compared to, for example, average rates charged for similar treatment in the community.

The Court now turns to the arguments raised in Panera's Motion.

**a. Panera is not entitled to judgment as a matter of law as to the reasonableness of Plaintiffs' past medical expenses.**

Panera asserts it is entitled to a judgment as a matter of law that Plaintiffs failed to present competent, substantial evidence of the reasonableness of their past medical expenses. (Dkt. 143 at 3–4) Panera maintains that the only evidence Plaintiffs produced at trial regarding the reasonableness of the amounts of their medical bills was Plaintiffs' "conclusory testimony that the bills and the summaries of the bills were theirs." (Id. at 3) Panera contends that none of treating physicians who testified opined

about the reasonableness and necessity of the amounts of Plaintiffs' bills, and Plaintiffs offered no expert on the issue. (Id.) Finally, Panera notes that Plaintiffs testified they still owed the amounts due on the medical bills. (Id. at 3–4)

At trial, Plaintiffs presented their own testimony about their injuries, symptoms, and why they sought treatment from their medical providers. Plaintiffs' testimony tied their treatment to pain and injuries that resulted from the October 3, 2019 accident. Plaintiffs also presented testimony from their treating physicians, who corroborated Plaintiffs' testimony about their injuries and their pain and the necessity of medical care to relieve their symptoms. Plaintiffs' treating physicians also opined that the accident caused Plaintiffs' injuries. This testimony, coupled with information present on the medical bills themselves, was sufficient evidence for the jury to find that Plaintiffs' past medical expenses were reasonable and necessary under Florida law.

***i. Plaintiff's Evidence as to Plaintiff Young's Past Medical Expenses***

Plaintiff Young testified that immediately following the accident, he experienced pain on the left side of his neck at the base of his skull. (Trial Tr. Day 2 at 69) An ambulance took Plaintiff Young from the scene of the accident to Sarasota Memorial Hospital. (Id. at 72) While at the hospital, Plaintiff Young complained of neck pain, extreme dizziness, and nausea. (Id. at 75) When he got home from the hospital, Plaintiff Young testified that he felt sore and started feeling a pain in his buttocks that was shooting down his leg. (Id. at 76)

The day after the accident, Plaintiff Young testified that he visited Dr. Gilbert, a chiropractor, to try to relieve the pain in his neck and the dizziness. (Id. at 77; Trial

Tr. Day 5 at 11–12) Dr. Gilbert testified that Plaintiff Young sought treatment for neck pain, back pain, headache, and radicular pain down the left leg. (Trial Tr. Day 5 at 14–16) Plaintiff Young also reported he had trouble sleeping. (Id. at 16) Dr. Gilbert testified that he ordered x-rays of Plaintiff Young and conducted motion and orthopedic testing on him. (Id. at 17) Dr. Gilbert testified that Plaintiff Young's x-rays showed objective indications of injury consistent with Plaintiff Young's complaints. (Id. at 18) Dr. Gilbert testified that Plaintiff Young visited him according to his recommendation for treating Plaintiff Young's injuries, three times a week. (Id. at 36) Dr. Gilbert's treatment provided Plaintiff Young some temporary relief. (Trial Tr. Day 2 at 78) But Dr. Gilbert, a licensed chiropractor, may not perform surgery, administer injections, or prescribe medications. (Trial Tr. Day 5 at 30) Plaintiff Young testified that Dr. Gilbert never prescribed surgery or shots for his pain. (Trial Tr. Day 2 at 81)

Plaintiff Young testified that in September 2020, he saw Dr. Jonathan Hall, a neurosurgeon, to seek treatment for his symptoms. (Id. at 79-80; Pl.'s Ex. 9 at 4) Plaintiff Young told Dr. Hall he was experiencing pain at the base of his skull as well as pain in his buttocks that was shooting down his leg. (Trial Tr. Day 2 at 80) Plaintiff Young testified that these pains had developed after the accident. (Id.) Plaintiff Young also testified that he was experiencing extreme migraine headaches, difficulty concentrating, and extreme dizziness. (Id. at 86) He had trouble with his memory and had trouble walking. (Id.)

Dr. Hall testified that Plaintiff Young sought treatment for constant neck pain and upper back pain that radiated toward his left shoulder and into his arms. (Trial Tr.

Day 5 at 227, 229) Dr. Hall also testified that Plaintiff Young complained of lower back pain that radiated into his left buttock and left thigh area, as well as numbness and tingling in his left hand. (Id.) Dr. Hall testified that Plaintiff Young told him he had been seeking chiropractic treatments in hopes of feeling better. (Id. at 230)

Both Plaintiff Young and Dr. Hall testified that Dr. Hall diagnosed Plaintiff Young with S.I. joint pain and administered injections to his S.I. joint. (Id. at 238; Trial Tr. Day 2 at 81) Plaintiff Young testified that the first injection alleviated some of his symptoms. (Trial Tr. Day 2 at 82) However, this relief faded, and the second injection did not provide any relief. (Id. at 84) Plaintiff Young testified that Dr. Hall recommended Plaintiff Young undergo a surgical S.I. fusion. (Id.) Plaintiff Young wanted to avoid surgery, however, and he never underwent an S.I. fusion with Dr. Hall. (Id. at 85–86)

After seeing Dr. Hall, Plaintiff Young testified that he saw Dr. Joel Franck, a neurosurgeon, in December 2021. (Trial Tr. Day 2 at 91) Plaintiff Young testified he visited Dr. Franck for treatment for extreme migraines, dizzy spells, and his difficulty concentrating. (Id.) Dr. Franck testified that Plaintiff Young complained of the following: severe neck pain; mid-back pain; pain between his shoulder blades; pain radiating into his left arm; numbness in his left arm; severe migraine headaches of which he had no prior history or family history; difficulty with his vision; brain fog; insomnia; and elevated blood pressure. (Trial Tr. Day 5 at 116)

Dr. Franck testified that he conducted a general physical exam and a detailed neurological exam of Plaintiff Young. (Id. at 122) Dr. Franck observed that Plaintiff

Young was tender to the touch in the muscles of the neck and the back, particularly at the juncture of skull and his spine. (Id. at 123) He had limited range of motion in rotation and flexion. (Id.) He had tenderness in the S.I. joint, where the hip and spine join in the back. (Id. at 123–24) Dr. Franck also testified that Plaintiff Young had trouble with his balance. (Id. at 124) The results of these exams indicated to Dr. Franck that Plaintiff Young had a major problem with his cervical spine and damage to or dysfunction of the brain stem and the spinal cord in the neck. (Id.)

Dr. Franck ordered an MRI and a moving x-ray for Plaintiff Young. (Id. at 126; Trial Tr. Day 2 at 93) Dr. Franck testified that the imaging showed Plaintiff Young suffered a ligament injury in the upper cervical spine from a traumatic event, causing a mass that was pressing on the lower part of the brain and the upper spinal cord. (Trial Tr. Day 5 at 130) The imaging also showed Plaintiff Young had herniated discs which were squeezing the spinal cord, causing many of his symptoms. (Id. at 131)

Dr. Franck testified that if symptoms like Plaintiff Young's go untreated, they get worse over time. (Id. at 153) Dr. Franck also testified that non-surgical therapy had not worked for Plaintiff Young. (Id. at 154) Dr. Franck testified that in his experience, the only long-term solution for symptoms like Plaintiff Young's is a spinal fusion surgery. (Id. at 154–56) So, Dr. Franck recommended and performed an outpatient spinal fusion surgery on Plaintiff Young. (Id. at 156) After the operation, Plaintiff Young spent one night in a hotel where a nurse monitored his condition and administered pain medication for him. (Id.) Then, he went home. (Id.) Both Dr. Franck and Plaintiff Young testified that the surgery resolved Plaintiff Young's

migraine headaches, brain fog, and dizziness. (Id. at 159; Trial Tr. Day 2 at 94) However, he still experienced low back pain and neck pain. (Trial Tr. Day 5 at 159; Trial Tr. Day 2 at 105–06)

Plaintiff Young then testified that in August 2022 he visited University Orthopedic Care to resolve the pain in his left buttocks that was shooting down his leg, which persisted from the date of the accident. (Pl.'s Ex. 10 at 8; Trial Tr. Day 2 at 109–10) Dr. Shaun Notman testified that he reviewed the x-ray images and the MRI taken of Plaintiff Young just after the accident. (Trial Tr. Day 3-2 at 106, 117) Dr. Notman testified that these images revealed that the curvature of Plaintiff Young's spine had been straightened and even reversed. (Id. at 107) They also showed that Plaintiff Young suffered from a disc bulge and two disc herniations. (Id. at 119) The images, therefore, corroborated Plaintiff Young's complaints of pain. (Id. at 120) Dr. Notman also reviewed images taken of Plaintiff Young nearly a year after the accident, in August 2020. (Id. at 128) Likewise, these images corroborated Plaintiff Young's complaints of pain. (Id. at 133) Dr. Notman testified that his physical exam of Plaintiff Young indicated that Plaintiff Young's left S.I. joint was inflamed. (Id. at 137–38)

Plaintiff Young and Dr. Notman testified that Dr. Notman administered an injection in his S.I. joints and performed ablations on his thoracic, lumbar, and both S.I. joints. (Trial Tr. Day 2 at 109–10; Trial Tr. Day 3-2 at 140; Pl.'s Ex. 10 at 15, 20) Plaintiff Young testified that these treatments alleviated the symptoms in his back. (Trial Tr. Day 2 at 116)

On cross-examination, Plaintiff Young testified that he sees an acupuncturist

and Dr. Manny Matthew for medical marijuana. (Trial Tr. Day 3-1 at 19–20)

In addition to his treating physicians, Plaintiff Young's wife, Barbara Young, corroborated his testimony about seeking medical care for the pain he experienced following the accident. (Trial Tr. Day 3-2 at 67–83)

Plaintiff Young identified Plaintiffs' Exhibit 24 as a collection of his medical bills.[1] (Trial Tr. Day 2 at 137) He testified that all these bills were for treatment related to the injuries he suffered because of the accident on October 3, 2019. (Id.) He testified that none of the bills were for treatment for any conditions that pre-existed the accident or for any conditions unrelated to the accident. (Id.)

***ii. Plaintiff's Evidence as to Plaintiff Firman's Past Medical Expenses***

Plaintiff Firman testified that he complained of neck pain to the EMS at the scene of the accident and was taken to Sarasota Memorial Hospital for diagnostic testing. (Trial Tr. Day 3-1 at 81) Plaintiff Firman also testified that he quickly sought chiropractic treatment from Dr. Gilbert for feelings of tightness and stiffness from the base of his skull down to his middle back, which radiated to his shoulder blades. (Id. at 84–85) Dr. Gilbert testified that Plaintiff Firman also complained of headache, blurred vision, and numbness in hands and feet. (Trial Tr. Day 5 at 42) As he did with Plaintiff Young, Dr. Gilbert took x-rays of Plaintiff Firman and performed various tests on him to diagnose his symptoms. (Id. at 44–45) Dr. Gilbert testified these tests

[1] The total of Plaintiff Young's medical expenses according to the summary in Exhibit 24 is $640,770.34. (Pl.'s Ex. 24) At trial, however, Plaintiff Young testified the total that appeared on the summary was $639,165.34. (Trial Tr. Day 2 at 138) The Parties do not raise this discrepancy for this Court's consideration.

and images were consistent with the symptoms Plaintiff Firman reported. (Id. at 46)

According to Plaintiff Firman, Dr. Gilbert's treatment alleviated his symptoms, but he still experienced them. (Id. at 88) He testified that he sought treatment from University Orthopedic Care to treat his lingering symptoms. (Id. at 89) At University Orthopedic Care, Plaintiff Firman saw Dr. James. (Id. at 91) Plaintiff Firman testified that Dr. James administered steroid injections into Plaintiff Firman's back, which relieved some of his pain for about a year. (Id. at 92–93) Plaintiff Firman went back to Dr. James when the relief subsided. (Id. at 95) Dr. James recommended Plaintiff Firman undergo another round of steroid injections, which he did. (Id. at 96) Plaintiff Firman testified that the injections relieved some of his pain, but not all of it. (Id. at 97) At the time of the trial, Plaintiff Firman testified he still experienced soreness and stiffness and "a lot of general pain . . . behind my neck and my upper spine . . . ." (Id. at 98) Plaintiff Firman testified he did not have such pain, soreness, or stiffness before the accident. (Id.)

Although Dr. James did not testify at the trial, Dr. Notman testified that he supervises Dr. James. (Trial Tr. Day 3-2 at 151) Based on Dr. Notman's review of Dr. James's notes, Dr. Notman explained that Dr. James administered steroid injections to Plaintiff Firman because the diagnostic imaging and Plaintiff Firman's consistent complaints of pain resulting from a car accident supported that course of treatment. (Id. at 151–56)

Plaintiff Firman identified Plaintiffs' Exhibit 33 as a collection of his medical bills. (Trial Tr. Day 3-1 at 99) He testified that these bills were for treatment related to

the injuries he suffered because of the accident on October 3, 2019. (Id.) Plaintiff Firman linked each of the bills to the treatment of his pain following the accident, except for the bill from Radiology Associates of Florida. (Id. at 100–01) He could not recall the services or treatment Radiology Associates of Florida provided him. (Id. at 101) However, the medical bill from Radiology Associates of Florida shows it was for $130 for a radiological examination of the cervical spine on October 3, 2019 at Sarasota Memorial Hospital Emergency Room. (Pl.'s Ex. 33 at 13) Thus, the jury could reasonably have concluded that this medical bill relates to Plaintiff Firman's treatment on the day of the accident.

The foregoing evidence is sufficient to establish that Plaintiffs "incurred medical expenses, that the incurrence of these medical expenses was necessary, and that the particular medical expenses claimed were reasonably related to injuries related to the subject accident." Roman, 393 So. 3d at 1267. Plaintiffs were not required to present evidence to justify the amounts of the medical bills. Instead, Florida law required Plaintiffs to present evidence sufficient to tie the incurrence of the expenses to the October 3, 2019 accident. See id. at 1268. The Court finds Plaintiffs presented evidence sufficient for the jury to conclude that they carried this burden. Panera is not entitled to judgment as a matter of law on the issue of the reasonableness of Plaintiffs' past medical expenses.

**b. Panera is not entitled to a new trial.**

Panera asserts three grounds for its request for a new trial under Rule 59. First, Panera argues this Court abused its discretion to exclude Panera's medical billing and

coding expert. (Dkt. 143 at 5–20) Second, Panera contends it was denied a fair trial because the Court admitted Plaintiffs' medical bills into evidence even though, Panera argues, Plaintiffs presented insufficient evidence of their reasonableness and necessity. (Id. at 20) Third, Panera argues Plaintiffs' counsel's rebuttal closing argument contained improper arguments that rendered the trial unfair. (Id. at 21–23)

***i. The Court did not abuse its discretion to exclude Panera's medical billing and coding expert.***

Panera argues that the Court improperly excluded the testimony of Keyona White, Panera's medical billing and coding expert. To determine whether expert testimony may be admitted, the court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters the expert intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted). Additionally, "[b]ecause of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." Id. at 1263 (citations omitted).

Panera argues Ms. White was qualified to testify about the reasonableness of the cost of Plaintiffs' medical treatment. Panera asserts that any disputes over the strength of Ms. White's qualifications should have gone to the weight of her testimony,

not to its admissibility. (Id. at 10) Then, Panera argues that Ms. White's experience and specialized knowledge regarding medical coding and regional pricing qualified her to opine as to the reasonableness of the amounts charged for the treatments Plaintiffs received. (Id. at 10–11)

Next, Panera argues Ms. White used a reliable methodology and reliable data to draw her conclusions. Panera argues that Ms. White relied on peer-reviewed data sources approved by health care professionals and other billing and coding professionals. (Id. at 12) Panera contends that Ms. White's reliance on these data sources is the standard practice of the medical community. (Id. at 13) Panera points to other cases in which courts admitted expert testimony that relies on the databases on which Ms. White relies. (Id.) Thus, Panera argues Ms. White's data was reliable. (Id.) Even if the data were flawed, however, Panera argues the flaws would be relevant to the weight of her testimony and not its admissibility. (Id. at 12) As to the data's relevance, Panera argues Ms. White's data reflects the amounts charged by physicians, not the amounts paid for services. (Id.) Thus, Panera argues Ms. White's data permits her to determine "objectively reasonable" charges for medical services. (Id. at 12–13) ("For example, although Plaintiffs were not Medicare recipients, Medicare rates provide indicia of what is reasonable.")

Panera also argues that Ms. White's testimony would have been helpful to the jury because the market value of medical services in a certain community is outside of technical province of the jury. (Id. at 15–17) Panera contends that the jury was required to decide that the cost of Plaintiffs' care was reasonable. (Id.) Panera maintains that

without Ms. White's testimony, the only justification for Plaintiffs' medical expenses was the medical bills themselves. (Id. at 16)

Panera argues that Ms. White's testimony would not have been an improper conduit for inadmissible hearsay. (Id. at 17–19) Panera notes that the experts may rely on hearsay sources and data to form an opinion. (Id. at 18)

Finally, Panera argues that this Court should not have relied on persuasive authority from within the Eleventh Circuit that excluded other medical billing and coding experts because the inquiry is specific to the qualifications of the individual expert. (Id. at 20) Panera argues that the proper exclusion of another medical billing expert does not necessarily support this Court's exclusion of Ms. White. (Id.)

In response, Plaintiffs argue that the Court did not abuse its discretion in concluding that Ms. White's qualifications were insufficient to opine as to the reasonableness of Plaintiffs' medical expenses because coding experts are only qualified to testify about whether medical bills were coded correctly, not whether medical charges were reasonable. (Dkt. 149 at 7) Plaintiffs cite to several cases, including an unpublished opinion of an Eleventh Circuit panel, to support their position. (Id.) Plaintiffs note that according to Ms. White's CV, Ms. White has never established or negotiated a medical provider's fees or rates. (Id. at 9) Plaintiffs argue this fact shows Ms. White has even less experience than other coding experts whose testimony has been excluded, such as those whose experience included establishing rate structures for providers, helping insurers with valuation issues, and negotiating third-party payer contracts. (Id.) Moreover, Plaintiffs point out that Panera relies on

cases in which courts admitted testimony from coding experts who were medical professionals, like surgeons and registered nurses. (Id. at 9–10) Ms. White, Plaintiffs note, is not a medical professional. (Id.)

Plaintiffs also argue that the Court did not abuse its discretion in finding that Ms. White's testimony would not assist the jury in deciding whether Plaintiffs' medical expenses were reasonable. (Id. at 10) Plaintiffs argue that Ms. White's conclusions as to the reasonable rate for certain medical treatments based on the mean billing rates for those treatments is irrelevant to the question of whether Plaintiffs' medical expenses were reasonable under Florida law. (Id. at 11) Plaintiffs also argue that even though Ms. White's data sources address the rates charged and not the amounts paid, Panera failed to show that Ms. White's conclusions were not skewed by her belief that certain third-party payer rates indicate what is reasonable. (Id.) Then, Plaintiffs also note that Ms. White's data sources do not consider self-pay bills. (Id. at 13)

The Court is not persuaded that it abused its discretion in excluding Ms. White's testimony. Plaintiffs' responses to Panera's arguments are well-reasoned and supported by the law. In particular, Ms. White, as a medical billing and coding expert, is not qualified to testify as to the reasonableness of the amounts charged for medical services. See Frushtick v. FeroExpress Inc., No. 18-cv-2891, 2022 WL 824239, at *4 (N.D. Ga. Mar. 18, 2022); Esteban-Garcia v. Wal-Mart Stores East LP, No. 21-cv-23831, 2022 WL 15493702, at *3 (S.D. Fla. Oct. 14, 2022); Collazo v. Progressive Select Ins. Co., No. 1:23-cv-22953, 2024 WL 4472013, at *3 (S.D. Fla. Sept. 23, 2025) (noting that "coding 'experts' are generally unqualified to testify as to the reasonable

charges for the myriad medical procedures involved in injury cases"); cf. Castellanos v. Target Corp., 568 F. App'x 886, 886 (11th Cir. 2014) (acknowledging a medical billing and coding expert would be qualified to opine "that the medical services billed did not reflect medical services actually delivered according to the treatment records").[2] Additionally, Ms. White's opinion about customary amounts charged for procedures billed by Plaintiffs' treating physicians would not be helpful to the jury. Hughes v. Wal-Mart Stores East, LP, No. 22-cv-60911, 2023 WL 3204662, at *4 (S.D. Fla. May 2, 2023); Frushtick, 2022 WL 824239, at *3; Esteban-Garcia, 2022 WL 15493702, at *3; Campo v. United States, No. 18-cv-80946, 2020 WL 774286, at *3 (S.D. Fla. Jan. 13, 2020); Maluff v. Sam's East, Inc., No. 17-cv-60264, 2017 WL 5290879, at *1 (S.D. Fla. Nov. 9, 2017). As stated at the beginning of this discussion, to establish the reasonableness and necessity of their past medical expenses, Florida law required Plaintiffs to tie their medical expenses to the injuries they suffered as a result of the October 3, 2019 accident. Florida law did not require Plaintiffs to justify the amount of each of their medical bills as "reasonable" under a market standard for medical charges in the community. Thus, Ms. White's opinion about the "reasonable" market rates charged for the treatment provided to Plaintiffs—as indicated by Medicare rates, for example—would not have helped the jury understand the evidence or determine a fact in issue. The persuasive authority of the aforementioned cases

[2] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it may be considered as persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited herein, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding.

assures the Court that it did not abuse its discretion in excluding Ms. White's testimony.

Ms. White was not offered to testify that Plaintiffs' medical expenses were too high for case-specific reasons or that Plaintiffs did not actually incur the expenses for treatments that they claimed they underwent. Instead, Ms. White was offered to opine that certain dollar amounts are objectively reasonable amounts to charge for certain treatments. This opinion was derived from statistical analysis of billing and payment practices. Ms. White would have opined that any greater dollar amount is unreasonable. In arriving at this conclusion, however, Ms. White apparently did not consider Plaintiffs' inability to negotiate their rates. Also, Ms. White apparently did not consider that there was no evidence that Plaintiffs' treating physicians would have been amenable to accepting any lower rate of reimbursement. The Court excluded Ms. White's testimony because the testimony was likely to confuse the issues, mislead the jury, and cause unnecessary protraction of the proceedings. Panera does not persuade the Court that this decision was error.

The Court denies Panera's request for a new trial on the basis that the Ms. White was improperly excluded.

***ii. The Court did not abuse its discretion to admit Plaintiffs' medical bills.***

Panera argues that because evidence was insufficient to support the reasonableness and necessity of Plaintiffs' medical treatment, the Court should have excluded Plaintiffs' medical bills as evidence of past medical expenses. (Dkt. 143 at

20) Panera requests the Court order a new trial without the admission of the medical bills. (Id.) Plaintiffs respond that their own testimony and the testimony of their medical providers established a sufficient predicate to admit the medical bills into evidence. (Dkt. 149 at 15)

Plaintiffs' "detailed description[s] of the treatment procedures clearly related the [treatment] to the accident." Easton v. Bradford, 390 So. 2d 1202, 1204 (Fla. 2d DCA 1980). Their testimony alone was sufficient to support the admission of the medical bills into evidence. See id. Plaintiffs also presented testimony from several of their medical providers who tied the actual treatment for which Plaintiffs were billed to their injuries and pain resulting from the October 3, 2019 accident. This testimony, especially when considered with Plaintiffs' testimony, was sufficient to support the admission of the medical bills into evidence. See Walerowicz, 248 So. 3d at 145.

Based on the foregoing, Panera fails to establish that the Court erred in admitting the medical bills into evidence. A new trial on this basis is not warranted.

***iii. Panera does not establish it is entitled to a new trial because of Plaintiffs' counsel's rebuttal closing argument.***

Panera argues that it was denied a fair trial because Plaintiffs' counsel made several allegedly improper arguments about Panera's failure to take responsibility. (Dkt. 143 at 21) Panera notes that Plaintiffs' counsel stated in his rebuttal closing argument:

> The bottom line here is this is what it looks like when a corporation does not take responsibility, that's it, that's what's going on here, and it's been going on since the very first day. This is a company that did not -- they didn't even

> want to admit to you, first of all, that the crash occurred the way it obviously did, that everyone said it did.

(Id. at 21 (quoting Dkt. 143-2 at 58)) Next, Panera notes Plaintiffs' counsel stated that "because Panera won't take responsibility," Panera forced Plaintiffs to disclose their treating doctors going back ten years. (Id. at 22 (quoting Dkt. 143-2 at 62)) Then, Panera notes Plaintiffs' counsel argued Panera wanted to "attack [Plaintiff Young's] character, they want to attack our doctors, they want to distract you from any possible understanding of the truth, which is that . . . their driver injured both of these grown men permanently, okay?" (Id. (quoting Dkt. 143-2 at 64)) Finally, Panera notes Plaintiffs' counsel argued as to their requested award of damages, "That's what justice and responsibility looks like in this case." (Id. (quoting Dkt. 143-2 at 69))

Panera also argues Plaintiffs' counsel made improper "conscience of the community" arguments during closing. (Id. at 23) Panera notes Plaintiffs' counsel addressed the jury, "[Y]ou have to make [Panera] responsible. You're the only one that can do it." (Id. (quoting Dkt. 143-2 at 66))

Even though Panera raised no objection to these comments during Plaintiffs' closing argument, Panera argues the Court's failure to take any action to curb the effect of these statements on the jury constituted fundamental error. (Id.)

In response, Plaintiffs argue these comments were not improper and that their publication to the jury did not constitute plain error. (Dkt. 149 at 15) Plaintiffs note that the allegedly improper comments were based on evidence introduced at trial. (Id. at 16) Plaintiffs also argue the comments, when understood in context, did not criticize

Panera for defending against Plaintiffs' claims. (Id. at 17) Finally, Plaintiffs argue these few comments made at end of a trial that lasted more than a week were not so prejudicial as to warrant a new trial. (Id. at 18) Plaintiffs correctly note that federal law governs whether counsel's arguments were so improper that a new trial is warranted. See Fed. R. Civ. P. 59(a)(1)(A) (permitting a court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court").

"[A] timely objection is necessary to bring to the district court's attention errors in counsel's arguments." Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc., 984 F.2d 1118, 1128 (11th Cir. 1993) (citations omitted). "When no objections are raised, [an appellate court] review[s] the arguments for plain error, but a finding of plain error 'is seldom justified in reviewing argument of counsel in a civil case.'" Id. (citations omitted). Under the plain error standard, "there must be (1) error, (2) that is plain, and (3) that affects substantial rights." Higgs v. Costa Crociere S.P.A. Co., 969 F.3d 1295, 1307 (11th Cir. 2020) (citations and internal quotations omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.; see also Strait v. Busch Ent't Corp., No. 8:05-cv-1864, 2007 WL 496607, at *2 (M.D. Fla. Feb. 12, 2007) (considering a request for a new trial on grounds that the defendant's counsel made improper arguments during closing argument and applying the plain error standard of review).

Against this high standard, Panera fails to establish the Court committed plain error by failing to address Plaintiffs' counsel's arguments. "Arguing that it is

reprehensible for the defendant you are suing to defend itself 'serves no proper purpose' and can sometimes be the basis for a new trial." Sowers v. R.J. Reynolds Tobacco Co., 975 F.3d 1112, 1123 (11th Cir. 2020) (citation omitted). However, while "[e]very defendant has a right to present a defense," a defendant may not "prevent the plaintiff from replying to it." Id. at 1125.

In rebuttal closing argument, Plaintiffs' counsel argued that the substance of Panera's defense exhibited a failure to take responsibility. In particular, counsel criticized Panera's heavy reliance on the testimony of Kyla Hullick, the Panera employee who rear-ended Plaintiffs, as evidence that the accident was not her fault. Plaintiffs' counsel noted that Ms. Hullick described the accident differently at trial than she had to her supervisor at the scene of the accident. (Trial Tr. Day 1 at 191; Trial Tr. Day 4 at 129-40) Her testimony also conflicted with the testimony of several of the other witnesses. For example, she testified that the when the accident occurred, traffic was not stopped or slowing and all the cars were moving. (Trial Tr. Day 4 at 132) No other witness testified that the accident occurred this way, including Panera's biomechanical engineering expert, Dr. Ming Xiao. (Trial Tr. Day 1 at 175; Trial Tr. Day 6 at 213) Notably, also, while Ms. Hullick gave her version of the details of the accident, she testified she could not recall any other relevant details, such as whether her Panera supervisor met her at the scene of the accident or whether she returned to work after the accident or went home. (Trial Tr. Day 4 at 129–40) Her inability to recall these details undermined the credibility of her testimony that the accident was not her fault. Plaintiffs' counsel noted that Panera, by adopting Ms. Hullick's

incredible version of events, "did not . . . admit to [the jury] . . . that the crash occurred the way it obviously did, that everyone said it did." (Dkt. 143-2 at 58) In other words, Plaintiffs' counsel argued, Panera failed to take responsibility. The Court is not persuaded this argument was improper. Thus, the Court did not plainly err by not objecting to it *sua sponte*.

Next, in rebuttal closing argument, Plaintiffs' counsel argued that because of Panera's failure to take responsibility, Panera required Plaintiffs to disclose "every single doctor" they had visited in ten years. (Dkt. 143-2 at 62) Plaintiffs' counsel also argued that Panera attacked the character of both Plaintiffs and Plaintiffs' treating physicians. These arguments responded to several arguments Panera's counsel made in closing argument. First, Panera's counsel implied that Plaintiff Young sold his car to prevent it from being inspected. (Dkt. 143-2 at 39) Panera's counsel also implied that Plaintiff Young purposely failed to disclose his prior experience with back pain and a prior incident that could have resulted in injury to his spine. (Id. at 49–50) As for Plaintiffs' physicians, Panera's counsel stated that Dr. Franck recommended surgery even though "all objective testing he performed on [Plaintiff] Young was normal." (Id. at 46) Importantly, also, Panera's counsel implied that Dr. Franck benefitted financially from prescribing Plaintiff Young an unnecessary surgery because Dr. Franck owns a share in the surgical outpatient center where the surgery took place. (Id.) Finally, Panera's counsel implied that Plaintiffs lied about their pain and what caused it:

> So, in summary, the evidence presented to you by the

> records, the photographs and the testimony shows that this jolt or bump to the rear bumper of Mr. Young's vehicle, which was at most at an impact of 9 miles per hour, did not cause the type of injuries that are being claimed in this case, they did not cause any acute anatomical or traumatic injuries, and [they caused] none of the damages being claimed by the plaintiffs, Fred Young and Jeff Firman.

(Id. at 54)

Panera argues that Plaintiffs' counsel's arguments in rebuttal improperly criticized Panera's decision to defend this case on grounds that the accident did not cause Plaintiffs' injuries. Plaintiff Young had a history of back pain. Panera was entitled to offer proof of this history as evidence that the October 3, 2019 did not cause Plaintiff Young's injuries. However, Plaintiffs were entitled to respond to this defense by Panera.

Importantly, Panera did not just emphasize the evidence that Plaintiff Young experienced back pain prior to the accident. Panera emphasized its position that Plaintiff Young intentionally failed to disclose the fact that he sought treatment for back pain in 2008. Panera also indicated that Plaintiff Young intentionally destroyed evidence when he sold the car involved in the accident to a junkyard. Panera implied that Dr. Frank recommended an unnecessary surgery for his own financial gain. These implications of Plaintiff Young's and Dr. Franck's alleged dishonesty supported Panera's conclusion that Plaintiffs and their doctors must be lying about their pain or about what caused it. In rebuttal, Plaintiffs' counsel defended Plaintiff Young's failure to disclose his prior back pain by characterizing Panera's request for more than 10 years of medical history as unreasonable and indicative of a failure to take

responsibility. Plaintiffs' counsel reasonably characterized Panera's other arguments as accusations that Plaintiff Young and Dr. Franck are liars or frauds, attacking their characters. Taking into account the nature of Panera's closing, the Court cannot find that the rebuttal arguments were improper or warrant a new trial. See Strait, 2007 WL 496607, at *1–2 (finding defense counsel's statements during closing that plaintiffs, their experts, and their counsel "were involved in a conspiracy to defraud the Court and the jury" did not warrant a new trial under the plain error standard).

As for the final, allegedly improper argument about responsibility, Plaintiffs' counsel said of their request for damages, "That's what justice and responsibility look[] like in this case." (Dkt. 143-2 at 69) This comment used rhetorical language to summarize the value of Panera's liability from Plaintiffs' perspective. The Court is not persuaded that this argument was improper.

Finally, Panera argues Plaintiffs' counsel made an improper "conscience of the community" argument when counsel stated, "[Y]ou have to make them responsible. You're the only one that can do it." (Id. at 60) "Arguments which invite a jury to act on behalf of a litigant become improper 'conscience of the community' arguments when the parties' relative popular appeal, identities, or geographical locations are invoked to prejudice the viewpoint of the jurors." Guar. Serv. Corp. v. Am. Employers' Ins. Co., 893 F.2d 725, 729 (5th Cir. 1990), modified on reh'g, 898 F.2d 453 (5th Cir. 1990). Notably, the Court is aware of no civil case in which the Eleventh

Circuit has acknowledged an improper "conscience of the community" argument.[3] Nonetheless, the Court considers whether Plaintiffs' comment improperly pitted the jurors against a foreign, corporate defendant. The Court finds it did not. Instead, Plaintiffs' counsel's argument reminded the jury of their role as the finders of fact with the obligation to decide which Party was liable for Plaintiffs' injuries. Moreover, the comment was not so inflammatory as to elicit an objection from Panera during trial. The Court concludes its decision not to interject *sua sponte* to admonish counsel regarding this comment, where Defendant interposed no objection, was not error.

For the foregoing reasons, Plaintiffs' counsel's closing arguments do not entitle Panera to a new trial.

**c. Panera is not entitled to remittitur.**

Finally, Panera argues the Court should reduce the jury's award of damages because, in Ms. White's opinion, the reasonable value of the past medical charges for Plaintiff Young was $234,956.07 and the reasonable value of the past medical charges for Plaintiff Firman was $50,066.32. (Dkt. 143 at 24) Panera argues the Court should remit or reduce the jury's award of past economic damages to Plaintiffs to these amounts. (Id. at 24–25) Additionally, Panera argues the "excessive past economic damages likely contributed to the jury's calculation of past non-economic damages,"

---

[3] The Eleventh Circuit has explored the propriety of "conscience of the community" arguments in appeals of criminal cases. See, e.g., United States v. Kopituk, 690 F.2d 1289, 1342–43 (11th Cir. 1982) ("Appeals to the jury to act as the conscience of the community, unless designed to inflame the jury, are not *per se* impermissible."); United States v. Smith, 918 F.2d 1551, 1562–63 (11th Cir. 1990) ("Prosecutorial appeals for the jury to act as 'the conscience of the community' are not impermissible when they are not intended to inflame.").

so the jury's award of past non-economic damages should be remitted as well. (Id. at 25)

As discussed above, Plaintiffs' evidence supports the jury's award of past medical expenses for both Plaintiffs under Florida law. Ms. White's opinion as to the reasonable value of Plaintiffs' medical expenses is not relevant. The Court declines to remit the jury's award of damages on this basis.

## IV. CONCLUSION

Upon consideration of the foregoing, the Court hereby **ORDERS** that Defendant Panera, LLC's Renewed Motion for Judgment as a Matter of Law, Alternative Motion for New Trial or Motion for Remittitur, (Dkt. 143), is **DENIED**. Defendant Panera, LLC's Request for Oral Argument on the Motion, (Dkt. 144), is **DENIED AS MOOT**.

**DONE AND ORDERED** in Tampa, Florida, this 20th day of August 2025.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of record
Any *pro se* party